UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL CHRISTOPHER STILL,

Plaintiff,

v.

WELLPATH, INC. et al.,

Defendants.

Case No. 2:26-cv-32

Honorable Maarten Vermaat

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.”).[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), “context matters” and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of “parties” and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of “the term ‘parties’ solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of ‘parties’ in other contexts”).

Plaintiff sues **Wellpath, Inc**., and the following URF staff: Medical Provider **Danya Russo**, Dietician **Jacob Burger**, and Correctional Officers **Unknown Clark**, **Unknown Leek**, **Unknown Braeckeveldt**, and **Unknown Schimmelpenny**. (Compl., ECF No. 1, PageID.2–3.)

In Plaintiff's complaint, he alleges that while housed in segregation, he received regular food trays instead of the diet food trays that Plaintiff was supposed to receive because of his gluten allergy. (*Id*., PageID.4.) On August 22, 2025, Defendant Clark served Plaintiff regular food trays for breakfast and lunch, instead of special diet trays. (*Id*.) At breakfast, Plaintiff told Defendant Clark that he should get a diet tray, and Defendant Clark responded that he did not have a diet tray to give Plaintiff and that "he's not inclined to contact food service to order it." (*Id*.) At lunch, Plaintiff told Defendant Clark that he was allergic to gluten and would get sick if he ate the regular food. (*Id*.) Defendant Clark told Plaintiff that Plaintiff "was trying to make him work," and that Plaintiff could either accept the regular tray or not eat. (*Id*.) After lunch, Plaintiff felt sick and experienced "severe stomach pains and diarrhea that lasted for multiple hours." (*Id*.)

The next day, August 23, 2025, Defendant Clark again gave Plaintiff regular food trays for breakfast and lunch. (*Id*., PageID.4, 5.) Plaintiff "tried to reason with" Defendant Clark, but Defendant Clark became annoyed and told Plaintiff he could either eat the regular food "or starve." (*Id*., PageID.4.) Shortly after these meals, Plaintiff felt sick, had stomach cramps and pains, and "had to rush to the toilet to vomit." (*Id*., PageID.4, 5.) On August 24, 2025, Defendant Clark again served Plaintiff regular food trays for breakfast and lunch. (*Id*., PageID.5, 6.) When Plaintiff complained, Defendant Clark threatened to put Plaintiff on food loaf. (*Id*., PageID.6.) Again, Plaintiff was sick with stomach cramps and diarrhea shortly after these meals. (*Id*., PageID.5, 6.)

On August 25, 2025, Plaintiff sent a kite to Defendant Medical Provider Russo, saying that he was not receiving his prescribed diet food trays and that he was being "forced to eat gluten or

starve." (*Id.*, PageID.6.) The complaint does not specify whether Plaintiff received a response to this kite.

Also on August 25, 2025, Defendant Clark gave Plaintiff regular food trays for breakfast and lunch despite Plaintiff's complaints. (*Id.*, PageID.6, 7.) Again, Plaintiff had stomach cramps and vomited after those meals. (*Id.*) On August 26, 2025, Defendant Clark served Plaintiff regular food trays for breakfast and lunch, and Plaintiff subsequently experienced stomach pain and diarrhea. (*Id.*, PageID.7.) Plaintiff protested when he received the breakfast tray but accepted the lunch tray "without incident." (*Id.*)

Defendant Leek serviced the food trays during dinner service on August 26, 2025. (*Id.*, PageID.8.) During that service, Plaintiff saw his diet tray on the food cart and requested that Defendant Leek provide that tray to Plaintiff. (*Id.*) Defendant Leek said that the diet tray was not for Plaintiff and gave Plaintiff a regular food tray. (*Id.*) After this meal, Plaintiff felt dizzy and was sick to his stomach. (*Id.*) Defendant Leek again gave Plaintiff a regular food tray for dinner on August 28, 2025, despite Plaintiff telling Defendant Leek that he was allergic to gluten and cannot eat gluten "without consequences." (*Id.*) Defendant Leek told Plaintiff that he could have a regular food tray or not eat. (*Id.*) After this meal, Plaintiff experienced stomach cramps. (*Id.*)

On August 30 and 31, 2025, Defendant Clark provided Plaintiff regular food trays on three occasions despite Plaintiff's objections. (*Id.*, PageID.8, 9.) Plaintiff felt ill after each of these meals, experiencing stomach cramps, stomach pains, and diarrhea. (*Id.*) Also on August 31, 2025, Plaintiff submitted a medical kite regarding his symptoms and why he was having those symptoms. (*Id.*, PageID.9.) Plaintiff's complaint does not provide any further information on this kite or whether Plaintiff received a response.

The next day, September 1, 2025, Defendant Clark served Plaintiff a regular food tray for lunch. (*Id.*, PageID.10.) Plaintiff later experienced stomach pains and diarrhea. (*Id.*) Later on September 1, 2025, Defendant Braeckeveldt served Plaintiff a regular food tray for dinner. (*Id.*) At that time, Plaintiff saw his diet food tray on the food cart and told Defendant Braeckeveldt that Plaintiff should receive the diet food tray. (*Id.*) Defendant Braeckeveldt responded, “so what,” and provided Plaintiff a regular food tray. (*Id.*) Plaintiff experienced stomach cramps and diarrhea after this meal. (*Id.*)

On September 2, 2025, Defendant Schimmelpenny served Plaintiff a regular food tray at lunch. (*Id.*, PageID.10.) Plaintiff told Defendant Schimmelpenny that he should receive a diet food tray (*Id.*) Defendant Schimmelpenny responded he did not have a diet food tray for Plaintiff and that Plaintiff could accept the regular food tray or not eat. (*Id.*) Plaintiff accepted the regular food tray and subsequently experienced stomach cramps and vomiting. (*Id.*, PageID.10–11.) For dinner on September 2, 2025, Defendant Braeckeveldt served Plaintiff a regular food tray despite Plaintiff telling Defendant Braeckeveldt that he should receive a special diet tray. (*Id.*, PageID.11.) Again Plaintiff experienced stomach pains and diarrhea after that meal. (*Id.*) That same day, Plaintiff submitted a grievance. (*Id.*, PageID.11.) Plaintiff’s complaint does not contain any additional information regarding this grievance.

On September 3, 2025, Defendant Clark served Plaintiff a regular food tray for lunch. (*Id.*, PageID.12.) Plaintiff told Defendant Clark to “get [him] a diet tray like he served [him] for breakfast.” (*Id.*) Defendant Clark said that the kitchen did not send a diet tray and that he was not going out of his way to make sure Plaintiff received a diet tray. (*Id.*) Plaintiff experienced stomach cramps and dizziness after that meal. (*Id.*)

On September 5, 2025, Plaintiff sent a medical kite explaining "how sick [he] was and the symptoms [he] was exhibiting." (*Id*., PageID.12.) Plaintiff "was scheduled to be seen . . . by a nurse," and was provided Tums and offered Imodium. (*Id*.)

Based on the foregoing allegations, Plaintiff raises Eighth Amendment deliberate indifference claims against all Defendants and a Fourteenth Amendment due process claim against Defendant Russo. Plaintiff seeks declaratory relief and monetary damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Official Capacity Claims

Plaintiff sues all named Defendants in both their individual and official capacities. (Compl., ECF No. 1, PageID.2–3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for

money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. (Compl., ECF No. 1, PageID.13.) As noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against the named Defendants in their official capacities. *See Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

In addition to monetary damages, Plaintiff also seeks declaratory relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S.

95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at URF, which is where he avers that the named Defendants are employed. Thus, Plaintiff cannot maintain his claims for declaratory relief against the named Defendants.

Accordingly, for these reasons, Plaintiff's claims against the named Defendants in their official capacities will be dismissed for failure to state a claim.

## IV. Claims Against Defendants Wellpath and Burger

Plaintiff names Defendants Wellpath and Burger as Defendants in this matter. (Compl., ECF No. 1, PageID.2, 3.) But the body of Plaintiff's complaint does not contain any allegations regarding Defendants Wellpath or Burger. (*See id.*, PageID.4–12.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged

violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Here, Plaintiff does not name Defendants Wellpath or Burger in the body of his complaint. (*See* Compl., ECF No. 1, PageID.4–12.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Because Plaintiff's claims against Defendants Wellpath and Burger fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his claims against Defendants Wellpath and Burger are subject to dismissal for failure to state a claim.

Accordingly, the Court will dismiss all intended claims against Defendants Wellpath and Burger.

## V. Claims Against Defendant Russo

Plaintiff alleges that on August 25, 2025, he sent a kite to Defendant Russo saying that he was not receiving his "medically prescribed diet trays" and that he was "being forced to eat gluten or starve." (Compl., ECF No. 1, PageID.6.) Plaintiff's complaint does not provide any further information regarding this kite, including stating whether Defendant Russo responded. Plaintiff also alleges that on August 31, 2025, he "turned in a medical kite regarding [his] symptoms and why [he had] those symptoms." (*Id.*, PageID.9.) Additionally, Plaintiff alleges that on September

5, 2025, he "obtained a medical kite and explained how sick [he] was and the symptoms [he] was exhibited." (*Id*., PageID.12.) Plaintiff was then scheduled to see a nurse and was given Tums and Imodium. (*Id*.) Plaintiff does not allege that he sent these additional kites to Defendant Russo or that she was involved in his medical visit or the medication that Plaintiff was provided. (*See id*.)

It is unclear what claims Plaintiff seeks to bring against Defendant Russo. His only allegation involving Defendant Russo is that he sent her a kite on August 25, 2025. (*See id*., PageID.6.) To the extent that Plaintiff seeks to bring a Fourteenth Amendment Procedural Due Process Clause claim regarding Defendant Russo's response, or lack thereof, to this kite, such a claim is unavailing.

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Like the grievance procedure, the Court has also held that there exists no constitutionally protected due process right in the handling of a kite. *See Williams v. Frank*, No. 1:23-cv-1101, 2024 WL 3579388, at *10 (W.D. Mich. July 29, 2024) ("To the extent Plaintiff takes issue with

the handling of his kite and grievance, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure.); *Taylor v. Brege*, No. 1:20-cv-180, 2020 WL 1545553, at *4 (W.D. Mich. Apr. 1, 2020) ("To the extent that Plaintiff alleges that Defendants did not properly handle his kites or grievances, he also fails to state a due process claim."). Because Plaintiff has no liberty interest in receiving a response to a kite, any lack of response from Defendant Russo does not constitute a violation of the Fourteenth Amendment Procedural Due Process Clause.

To the extent that Plaintiff seeks to raise claims against Defendant Russo based on Plaintiff's visit with "a nurse" or the allegedly unconstitutional conduct of the other named Defendants, those claims also fail. As an initial matter, Plaintiff's allegations show that he was seen by a nurse and provided medical treatment. (Compl., ECF No. 1, PageID.12.) Plaintiff does not allege that this medical treatment was insufficient. (*See id*.) Moreover, Plaintiff fails to attribute any specific conduct regarding his medical treatment or his receipt of regular food trays to Defendant Russo. See *Heyne*, 655 F.3d at 564. Therefore, Plaintiff has failed to show that Defendant Russo was personally involved in those alleged constitutional violations.

To the extent that Plaintiff seeks to hold Defendant Russo liable due to her supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based

upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee* [*v. Luttrell*], 199 F.3d [295,] 300 [(6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). Plaintiff's complaint does not contain any indication that Defendant Russo implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct of others.

Accordingly, Plaintiff has failed to state any claim against Defendant Russo, and the Court will dismiss those claims.

## VI. Eighth Amendment Deliberate Indifference Claims—Defendants Clark, Leek, Braeckeveldt, and Schimmelpenny

Plaintiff alleges that Defendants Clark, Leek, Braeckeveldt, and Schimmelpenny gave Plaintiff regular food trays instead of diet food trays on a number of occasions between August 22, 2025, and September 3, 2025, despite the fact that Plaintiff informed them that he should receive diet food trays. (Compl., ECF No. 1, PageID.4–12.) Plaintiff alleges that he became ill after receiving the regular food trays. (*Id.*) The Court construes these allegations as raising Eighth Amendment claims.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated

under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, although Plaintiff has by no means proven his Eighth Amendment claims regarding his receipt of regular trays despite his gluten allergy, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants Clark, Leek, Braeckeveldt, and Schimmelpenny in their individual capacities at this stage of the proceedings.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Defendants Wellpath, Burger, and Russo will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against remaining Defendants Clark, Leek, Braeckeveldt, and Schimmelpenny. Plaintiff's individual capacity Eighth Amendment claims against Defendants

Clark, Leek, Braeckeveldt, and Schimmelpenny regarding Plaintiff's receipt of regular trays despite his gluten allergy remain in the case.

An order consistent with this opinion will be entered.

Dated: September 2, 2026

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge